Filed 4/17/15  In re Jonathan A. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Jonathan A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN A.,<br><br>　　　　Defendant and Appellant. | A141302<br><br>(Alameda County<br>Super. Ct. No. SJ13022106) |

Jonathan A. appeals from an order declaring him a ward of the court.  The juvenile court deemed him ineligible for deferred entry of judgment (DEJ; Welf. & Inst. Code, § 790 et seq.).[1]  Jonathan contends that the juvenile court was required to obtain a report from the probation department regarding his suitability for DEJ and hold a hearing on that issue before entering a dispositional order.  We disagree and affirm the juvenile court's disposition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2013, just after midnight, Christian E., Robert L., and Francisco H. approached a woman in a liquor store parking lot and threatened to shoot unless she exited her vehicle.  The victim did not surrender the vehicle, and Christian, Robert, and Francisco punched her and pulled her out of the car.  Once she was on the

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

ground, they continued to punch, kick, and pull large clumps of her hair out.  Jonathan, who was 15 years old at the time, stood behind the other three with a scarf covering his face.

When the victim ran for help, Jonathan and the three others got into her car and drove away.  When police attempted to stop them, Christian drove the car into a patrol vehicle and fled at a "high rate of speed."  The chase ended a mile later when Christian crashed the car into a wall.  Police detained Jonathan, who was still in the right rear passenger seat wearing his seatbelt, without incident.  At a field show up, the victim identified all four individuals as being involved in the robbery and assault.

The Alameda County District Attorney filed a section 602 wardship petition against Jonathan alleging robbery (count one) and assault by means of force likely to produce great bodily injury (count two).  (Pen. Code, §§ 211, 245, subd. (a)(4).)  The district attorney filed Judicial Council Forms, form JV-750 ("Determination of Eligibility Deferred Entry of Judgment—Juvenile"), stating that Jonathan was not eligible for DEJ because the petition alleged an offense listed in section 707, subdivision (b).[2]

On December 30, 2013, Jonathan admitted the robbery allegation, in exchange for dismissal of the assault allegations.  His counsel conceded a factual basis for Jonathan's admission, but he also referred to the intake reports and noted that Jonathan "was not one of the ones who physically did the act but stood in the background . . . ."  At the January 14, 2014 disposition hearing, the court adjudged Jonathan a ward of the court and ordered him removed from his parents' home for suitable placement.

Thereafter, the court appointed new counsel for Jonathan, who filed a motion to vacate the disposition pursuant to section 778.[3]  In the motion, Jonathan asserted that his

---

[2] Both robbery and "[a]ssault by any means of force likely to produce great bodily injury" are listed.  (§ 707, subd. (b)(3), (14).)

[3] Section 778, subdivision (a)(1), provides in relevant part:  "Any parent or other person having an interest in a child who is a ward of the juvenile court or the child himself . . . through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child

prior counsel had ineffectively represented his interests by failing to conduct an adequate investigation of both the alleged offense and the appropriate disposition. With this motion pending, Jonathan filed, on March 17, 2014, a timely notice of appeal from the original disposition order. On March 27, the juvenile court granted the motion. All dispositional findings and orders were set aside, and a new disposition hearing was scheduled.

Jonathan then filed a motion to vacate his prior admission. On April 23, 2014, by stipulation, Jonathan withdrew his prior plea and admitted the "reasonably related" felony offense of being an accessory after the fact to a robbery. The minute order from the hearing states: "Based on [the prosecution's] oral motion, the petition is amended to change Count 1 from [Penal Code section] 211 (F) to [Penal Code section] 32 (F)." However, the reporter's transcript shows no mention of a motion to amend the petition. Instead, the transcript shows the following colloquy between the juvenile court and counsel:

"[Prosecutor]: Your Honor, what we're going to do this morning is, the minor is going to be withdrawing his plea to the 211 and entering a new and different plea, that being an admission *to a reasonably related offense*, a felony violation of Penal Code Section 32, which counsel will agree is a *reasonably related offense*. His maximum exposure will be three years in a locked facility.

"THE COURT: So, [defense counsel], is here with the minor. . . . Is this your understanding, [defense counsel]?

"[Defense counsel]: That's right, Your Honor." (Italics added.)

After Jonathan waived his jurisdictional rights and admitted being an accessory after the fact to the robbery, the juvenile court stated: "I find the minor has made a knowing and voluntary waiver of his rights, and understands the nature and consequences of doing so. He's described by [section] 602 in that he committed [a] felony violation of

_____

was found to be a ward of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

3

[Penal Code section] 32, *reasonably related to the robbery in count one*. Count two is dismissed with facts and restitution open." (Italics added.) The court ordered Jonathan detained at juvenile hall, set the maximum time of confinement at three years, and scheduled a new disposition hearing.

At the disposition hearing, Jonathan argued that he was now eligible for DEJ and that the court and the district attorney should reassess his eligibility. Specifically, defense counsel said, "I do believe that [Jonathan] is, in fact, eligible for [DEJ]" because the minute order characterized the recent admission as "the petition is amended to *change*—and that's an important word—count 1 from 211 to a [Penal Code section] 32." (Italics added.) Counsel argued that the assault allegation in count two had been dismissed as a result of the earlier plea deal, and thus the new order dismissing count two "was irrelevant and non-existent because the 245 had already been dismissed." He concluded: "[T]he only valid . . . charge before [Jonathan] was the [Penal Code section] 32."

The court disagreed. The court explained: "Well, I think perhaps there's a mistake on the minute order, in any event. Even if he is eligible, he's not suitable, so I'll make an order that he could be eligible based on the language of the minute order. My understanding was that he pled and admitted to a lesser or reasonably-related crime. I'm sure that when I made my finding I didn't say it was as charged as a 32 but it was a reasonably-related crime to Count 1. I don't have the transcript, but that's what I always say. I'm quite sure I said that. [¶] . . . [¶] . . . So if that error is there or can be interpreted as an error, I'm telling you right now that he's not going to get [DEJ] whether he's . . . eligible for it or not. He's not suitable." Defense counsel asked for a hearing on DEJ suitability, to which the court responded: "Believe me. This case has been here a lot, and I've read a lot, and there's nothing more I'm going to read that's going to change my mind."

At the conclusion of the disposition hearing, the juvenile court adjudged Jonathan a ward of the court and placed him in the custody of the probation department for suitable placement. Counsel renewed Jonathan's request for DEJ. The court replied that "[t]here

4

was never any finding of eligibility" and "that even if he had been eligible, [the court] would have denied suitability." Before any briefing had been filed on the appeal from the January 14, 2014 order, Jonathan filed a timely notice of appeal from the new disposition order.[4]

## II.   DISCUSSION

" 'The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791,

---

[4] We requested supplemental briefing from the parties regarding the juvenile court's jurisdiction to vacate the original disposition after the first notice of appeal was filed. The People rely on the general rule that "[i]t is black letter law a trial court loses jurisdiction to vacate its own judgment once a party files a notice of appeal, thus shifting jurisdiction over the cause to the Court of Appeal. [Citations.]" (*People v. Malveaux* (1996) 50 Cal.App.4th 1425, 1434.) However, we agree with Jonathan, that *Malveaux* is distinguishable in that sections 775 and 778 were not addressed. (*Malveaux*, at pp. 1434–1436.) Section 775 provides: "Any order made by the court in the case of any person subject to its jurisdiction may *at any time* be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article." (Italics added.) And other courts have declined to find "a jurisdictional analogy . . . between an appeal from a wardship adjudication and a stay of proceedings pending a criminal appeal." (*In re Katherine R.* (1970) 6 Cal.App.3d 354, 356 ["[w]ardship, or jurisdiction over the person of a minor, is a continuing condition or status for the welfare of the child and changed circumstances must be considered in any proceeding concerning the child's status, even though such changed circumstances may develop during the pendency of an appeal"].) Pursuant to *Katherine R.* and sections 775 and 778, the juvenile court retained jurisdiction to make its March 27, 2014 order vacating its January disposition.

5

subd. (a)(3),[5] 793, subd. (c).)' " (*In re Kenneth J.* (2008) 158 Cal.App.4th 973, 976; *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1121–1122.) The procedures for considering DEJ reflect a " 'strong preference for rehabilitation of first-time nonviolent juvenile offenders' " and limit the court's power to deny DEJ such that denial of DEJ to an eligible minor who wants to participate is proper only when the juvenile court finds that " 'the minor would not benefit from education, treatment and rehabilitation.' [Citation.]" (*In re A.I.* (2009) 176 Cal.App.4th 1426, 1434.)

"The determination of whether to grant DEJ requires consideration of 'two distinct essential elements of the [DEJ] program,' viz., 'eligibility' and 'suitability.' [Citation.]"

---

[5] Section 791, subdivision (a), provides in relevant part: "The prosecuting attorney's written notification to the minor shall also include all of the following: [¶] . . . [¶] (3) A clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant [DEJ] with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment, and that upon the successful completion of the terms of probation, as defined in Section 794, the positive recommendation of the probation department, and the motion of the prosecuting attorney, but no sooner [than] 12 months and no later than 36 months from the date of the minor's referral to the program, the court shall dismiss the charge or charges against the minor. [¶] (4) A clear statement that upon any failure of the minor to comply with the terms of probation, including the rules of any program the minor is directed to attend, or any circumstances specified in Section 793, the prosecuting attorney or the probation department, or the court on its own, may make a motion to the court for entry of judgment and the court shall render a finding that the minor is a ward of the court pursuant to Section 602 for the offenses specified in the original petition and shall schedule a dispositional hearing."

Section 791, subdivision (b), provides: "If the minor consents and waives his or her right to a speedy jurisdictional hearing, the court may refer the case to the probation department or the court may summarily grant [DEJ] if the minor admits the charges in the petition and waives time for the pronouncement of judgment. When directed by the court, the probation department shall make an investigation and take into consideration the defendant's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation. The probation department shall also determine which programs would accept the minor. The probation department shall report its findings and recommendations to the court. The court shall make the final determination regarding education, treatment, and rehabilitation of the minor."

6

(*In re C.W.* (2012) 208 Cal.App.4th 654, 659.) Jonathan argues that the juvenile court "made two legal errors: it decided Jonathan was ineligible for DEJ, and then without referring the case to probation for investigation and report and without holding a hearing, it decided Jonathan was unsuitable for DEJ." The People argue that no suitability determination was required in this case because Jonathan was not eligible for DEJ. We agree with the People.

We independently review the juvenile court's ruling because it presents a question of statutory construction based on undisputed facts. (*In re James H.* (2007) 154 Cal.App.4th 1078, 1083.) The DEJ provisions apply "whenever a case is before the juvenile court for a determination of whether a minor is a person described in Section 602 because of the commission of a felony offense," if certain conditions apply. (§ 790, subd. (a).) At the time relevant herein,[6] " ' "[s]ection 790 ma[de] a minor eligible for DEJ if all the following circumstances exist: [¶] '(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) *The offense charged is not one of the offenses enumerated in subdivision (b) of Section 707.* [¶] (3) The minor has not previously been committed to the custody of the Youth Authority. [¶] (4) The minor's record does not indicate that probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code.' (§ 790, subd. (a)(1)–(6).)" ' [Citations.]" (*In re Joshua S.* (2011) 192 Cal.App.4th 670, 676, italics added (*Joshua S.*).)

"If the child admits each allegation contained in the petition as charged and waives the right to a speedy disposition hearing, the court may summarily grant [DEJ]." (Cal. Rules of Court, rule 5.800(d)(2).) If the child is eligible, but the juvenile court does not summarily grant DEJ, it " 'must conduct a hearing at which "the court *shall* consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other

---

[6] Section 790 has since been amended. (Stats. 2014, ch. 919, § 4.)

7

interested parties." ([Former Cal. Rules of Court, rule] 1495(f) [(now rule 5.800(f))], italics added.)' [Citation.]" (*Joshua S., supra,* 192 Cal.App.4th at p. 677.)  "Under proper circumstances the court may refuse DEJ even to minors eligible under section 790, subdivision (a).  [Citation.]  While section 790 et seq. might be clearer on the matter, we conclude such denial is proper only when the trial court finds the minor would not benefit from education, treatment and rehabilitation." (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 560–561.)  " 'The court is not required to ultimately grant DEJ, but is required to at least follow specified procedures and exercise discretion to reach a final determination once the mandatory threshold eligibility determination is made. [Citation.]' [Citation.]" (*Joshua S.,* at p. 678.)

Jonathan asserts that, despite the prosecutor's initial finding of ineligibility, he was eligible for DEJ because he ultimately admitted only being an accessory to robbery—an offense not listed in section 707, subdivision (b).  He maintains that his eligibility "was not governed by the *vacated* original petition; it was governed by the allegations he was asked to admit in the *amended* section 602 petition."  (Italics added.)

Jonathan relies on *Joshua S.,* in which our colleagues in Division Two held that a minor does not need to admit the original charges against him in order to be eligible for DEJ.  (*Joshua S., supra,* 192 Cal.App.4th at pp. 680–682.)  In that case, the section 602 petition alleged that Joshua S. possessed cocaine base for sale and falsely represented his identity to a peace officer.  He was determined to be eligible for DEJ.  Thereafter, the possession count was amended to allege that Joshua S. was an accessory to a felony.  He admitted the amended count and the second count was dismissed.  Another wardship petition was filed, alleging four felony counts—possession of marijuana for sale, two counts of transportation or sale of marijuana, and unlawful carrying of a loaded firearm. Joshua S. was again determined to be eligible for DEJ.  He filed a motion to suppress evidence, which apparently was not heard.  He then admitted to an amended count of possession of cannabis and the remaining counts were dismissed.  The juvenile court committed Joshua S. to a juvenile rehabilitation facility without considering DEJ.  (*Id.* at pp. 674–675.)

8

On appeal, Joshua S. argued that the matter must be remanded because the juvenile court failed to exercise its mandatory discretion to grant or deny DEJ. (*Joshua S., supra*, 192 Cal.App.4th at p. 675.) The court reviewed the DEJ procedures outlined above and observed: " 'While the court retains discretion to deny DEJ to an eligible minor, the duty of the prosecuting attorney to assess the eligibility of the minor for DEJ and furnish notice with the petition is mandatory, as is the duty of the juvenile court to either summarily grant DEJ or examine the record, conduct a hearing, and make "the final determination regarding education, treatment, and rehabilitation . . . ." [Citations.] . . . .' [Citation.]" (*Id.* at pp. 677–678.)

Joshua S. contended that the prosecutor's burdens had been met, but that the juvenile court failed to make the DEJ determination required by sections 790 and 791. (*Joshua S., supra*, 192 Cal.App.4th at p. 678.) The court rejected the People's argument that the court properly did not consider DEJ because Joshua S. had not admitted all of the allegations of the petitions, but rather, had negotiated a plea to reduced charges. (*Id.* at pp. 678–679.) The court reasoned: "[Joshua S.] did not initially admit the allegations of the petition, but neither did he insist on a jurisdictional hearing. . . . [¶] . . . [¶] [A] minor is not required to forego the right to a suppression hearing in order to accept DEJ. No part of a jurisdictional hearing was undertaken in the present case. When the suppression motion was denied . . . , [Joshua S.] admitted a reduced charge. In the [other] case, [Joshua S.] apparently did not pursue the suppression motion but rather admitted an amended petition. . . . [Joshua S.] did not reject DEJ and then seek to take advantage of it after contesting the allegations against him. [¶] We are not persuaded by [the People's] assertion that the DEJ procedures require the minor to admit the charge initially alleged in the petition rather than a reduced one, as long as the admission *precedes* a contested jurisdictional hearing. A minor is not entitled to DEJ where he or she does not ' "admit the allegations" of the section 602 petition . . . " 'in lieu of jurisdictional and dispositional hearings.' " ' [Citations.] . . . Here, however, no jurisdictional hearing was held." (*Id.* at pp. 679–680.)

9

The *Joshua S.* court also rejected the People's contention that Joshua S. should not be considered for DEJ after negotiating a plea agreement reducing his legal responsibility because to do so "would remove [a] minor's incentive to 'expedite the process by a full admission of responsibility.' " (*Joshua S., supra*, 192 Cal.App.4th at p. 681.) The court explained: "[T]he process in the present case was expedited: [Joshua S.] admitted the allegations of the (amended) petition right after the denial of his suppression motion . . . , with no attempt to litigate the petitions. Thus, DEJ could have been granted, if found appropriate, 'in lieu of jurisdictional and disposition hearings' (§ 791, subd. (a)(3)). And [Joshua S.] did admit responsibility for his offenses, albeit not full responsibility for the initially charged offenses. In requiring a minor to 'admit[] each allegation contained in the petition,' section 791, subdivision (a)(3), does not specify that the petition cannot be amended where, as here, the amendment does not follow and is not the consequence of the minor contesting one or more of the allegations of the initial petition. [Citation.] The circumstances of this case are consistent with the goal of expediting juvenile wardship proceedings and avoiding contested jurisdictional hearings. Further, making DEJ unavailable to a minor who admits an amended petition without contesting the allegations of the initial petition would not serve the [stated statutory] goal of increasing rehabilitation for first-time nonviolent offenders . . . . [Citations.]" (*Joshua S.*, at p. 681.) Accordingly, the matter was remanded so that the juvenile court could determine whether to grant or deny DEJ. (*Id.* at pp. 673, 682.)

Similar to Joshua S., Jonathan admitted being an accessory to robbery without requesting a contested jurisdiction hearing. Nonetheless, *Joshua S.* is distinguishable because in that case the minor was explicitly determined at the outset to be eligible for DEJ and neither the original charges nor the amended charges included an offense enumerated in section 707, subdivision (b). (*Joshua S., supra*, 192 Cal.App.4th at p. 674.)[7]

---

[7] In his reply brief and at oral argument, Jonathan cited *In re T.J.* (2010) 185 Cal.App.4th 1504 for the proposition that the allegations of the section 602 petition do not govern. Instead, "[w]hat matters is whether the minor admits [charges not listed in

Here, Jonathan's characterization of the original section 602 petition as having been vacated is flawed. Despite some ambiguity in the record, the section 602 petition was never amended to charge only offenses not enumerated in section 707, subdivision (b). The reporter's transcript does not reflect that the prosecution moved to amend the section 602 petition to substitute the accessory charge for the robbery charge. Instead, it appears the juvenile court relied on the parties' consent to sustain a finding that Jonathan had committed an offense other than one specifically alleged in the petition or necessarily included therein.[8] (See *People v. Birks, supra,* 19 Cal.4th at p. 136 & fn. 19

---

section 707, subdivision (b),] before the jurisdictional hearing." In *T.J.*, the wardship petition alleged that the minor had committed three forcible lewd acts on a child under the age of 14. Because the allegations included an element of force, the minor was deemed ineligible for DEJ. (*T.J.,* at p. 1509.) However, following a contested jurisdictional hearing, the prosecution dismissed the third count, for insufficiency of the evidence. The juvenile court also found that the element of force was unsupported for the other two counts, but that the lesser offense of lewd acts on a child had been proven beyond a reasonable doubt. (*Id.* at pp. 1508, 1509.) The minor argued that he became eligible for DEJ because "the charges remaining against him were 'limited to violation of Penal Code section 288, subdivision (a), an offense which is not enumerated in subdivision (b) of . . . section 707." (*T.J.*, at p. 1512.) The reviewing court rejected the argument, explaining: "[E]ven if he had satisfied section 790, he had not done so in the manner required by the notice provisions of section 791, subdivision (a)(3). The minor had not *admitted* any allegations, and he necessarily had not done so *in lieu of* the jurisdictional hearing that had just been conducted." (*T.J.*, at p. 1512, fn. omitted.) The *T.J.* court merely assumed, without deciding, that a minor could establish eligibility for DEJ under section 790, solely on the basis of the remaining charges. We decline to extend *T.J.* or *Joshua S.* as Jonathan suggests. Opinions are not authority for propositions not considered. (*People v. Avila* (2006) 38 Cal.4th 491, 566.)

[8] "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 117–118, fn. omitted.) Looking solely at the statutory elements, the crime of accessory after the fact is not a lesser included offense to robbery. (*People v. Schmeck* (2005) 37 Cal.4th 240, 291–292, disapproved on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610, 637–638; Pen. Code, §§ 32, 211.) Furthermore, the section 602 petition does not allege all of the elements of the offense actually admitted by Jonathan. Count one alleged: "[O]n or about December 14th, 2013,

11

["our decision does not foreclose the parties from agreeing that the defendant may be convicted of a lesser offense not necessarily included in the original charge"]; *In re Robert G.* (1982) 31 Cal.3d 437, 445 ["a wardship petition under section 602 may not be sustained upon findings that the minor has committed an offense or offenses other than one specifically alleged in the petition or necessarily included within an alleged offense, unless the minor consents to a finding on the substituted charge"].)

An offense enumerated in section 707, subdivision (b)—robbery—remained. That the minute order may have suggested otherwise is of no moment when the reporter's transcript is clear regarding the intent of the parties and the court. (*People v. Smith* (1983) 33 Cal.3d 596, 599 [when harmonization is not possible, "that part of the record will prevail, which, because of its origin and nature, is entitled to greater credence"]; *In re Evans* (1945) 70 Cal.App.2d 213, 216 [same]; *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1259–1260, fn. 9 [juvenile court's oral pronouncement prevails when its written order is internally inconsistent].) We conclude that the juvenile court's oral pronouncement, which did not include any discussion of amendment of the section 602 petition, prevails over the minute order.

In any event, even if the minute order is correct that the section 602 petition was amended to substitute the accessory charge for the robbery charge, we cannot agree with Jonathan that, after he withdrew his prior admission, the felony assault count remained dismissed. This argument is inconsistent with both the reporter's transcript and the minute order. Furthermore, Jonathan's interpretation of the record would allow him to repudiate a plea bargain agreement without restoring the prosecution's quid pro quo. We will not assume that this was the parties' intent. (See *People v. Collins* (1978) 21 Cal.3d 208, 215 ["when the defendant withdraws his guilty plea or otherwise succeeds in attacking it, counts dismissed pursuant to a plea bargain may be restored"]; *In re Ricardo C.* (2013) 220 Cal.App.4th 688, 699 ["court could not proceed to apply and enforce

---

. . . [Jonathan] did then and there commit a FELONY, to wit:  ROBBERY, a violation of Section 211 of the Penal Code . . . , in that [Jonathan] did then and there rob [the victim] of 1996 VOLVO, PURSE & PERSONAL PROPERTY."

certain parts of the plea bargain, while ignoring the provision that had been material to the People's agreement to the bargain"].)  The juvenile court did not err in finding Jonathan ineligible for DEJ.

### III.    DISPOSITION

The disposition order is affirmed.


_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.